First case on our call this morning is agenda number seven, case number 108-799, Pekin Insurance Company, et al. v. Jack O. Wilson. Counsel may proceed. May it please the court. My name is Scott Howey, and I represent the plaintiff, Appelant in this matter, the Pekin Insurance Company. This is a case about liability insurance, and it concerns one of the issues that is most fundamental and most basic to both insurers and their insureds, the question of how to determine if an underlying action invokes the insurer's duty to defend. And more specifically, what materials are relevant to that issue. And more specifically still, whose materials, whose description should play a role in that process. Well, this court answered that question in 1987, in the case of Zurich v. Raymark Industries, where it held, and I quote, the duty to defend an action brought against the insured is determined solely, solely by reference to the insured. To the complaint, that is, the underlying complaint. The appellate court didn't follow that clear directive in this case, aligning itself with a renegade group of First District cases that has gone beyond the underlying complaint and has consulted other materials, specifically other pleadings filed by the insured himself or herself with regard to interpreting the underlying case and determining if it does, in fact, invoke the insurer's duty to defend. By going beyond the underlying complaint, and especially by going beyond the underlying complaint to consider pleadings prepared by the insured, the Fifth District contradicted Zurich v. Raymark and a host of other decisions in fundamental ways that this court must reverse. And in fact, there are cases, counsel, that say that you can go outside of the complaint, as you've alluded to. In this type of situation where there's an exception to an exclusion, would there ever be a situation where a plaintiff would allege sufficient facts to bring that into play, that exception to the exclusion? It's not hard to imagine that there are situations like that. And in fact, I submit that it's not only is it reasonable to expect that a plaintiff might make the allegations that raise the subject of self-defense and, therefore, would invoke the exception that's at issue here, but that it's unreasonable to expect him not to in a case where those facts do, in fact, present themselves. Now, it is certainly understandable that a plaintiff might be reluctant to make those allegations and might be reluctant, therefore, to bring the case itself for fear of... But clearly, counsel, you can expect that the insurance company wouldn't allege facts that would bring in an exclusion? If those facts are something that... I mean, you can say that about the plaintiff, but you can also say it about the insurance company. Why would they do that? It wouldn't be in their interest. Well, both parties are limited by the Zurich rule, which provides the underlying complaint as the sole source of allegations, of interpretations, that determine the insurer's duty to defend. Speaking of Zurich, wasn't Zurich talking about the duty, about indemnity? Indemnity was at issue in that case, Your Honor, and that's... The subject, though, of the rule that's at issue in this Court in this case was the duty to defend, and the Court... Which is broader than the duty to indemnify. It is, and yet it is, as Zurich, this Court mentioned in Zurich and held specifically, is determined solely by reference to that underlying complaint. There are important and compelling systemic reasons for limiting the inquiry to that document, and those reasons are embodied in the very notion of what liability insurance is. Liability insurance provides coverage and provides a defense, where it applies, against claims that are made by underlying plaintiffs. It is intended to cover claims, unlike property or casualty policies, which are concerned with coverage for things that actually happened, liability insurance is different. It provides coverage for what a plaintiff claims happened, and the underlying complaint is the only document that reliably describes what the plaintiff's claim is. If the insurance company is called upon to defend against a claim, that is, again, the very notion of what liability insurance coverage does, then that claim has to be interpreted from the perspective of the person making it, the person who has it, the underlying plaintiff. The exception in the policy, then, would never come into play. It renders it superfluous, because you would never hear from the respondent to allege self-defense, which is an exclusion. But if self-defense is actually what happened, if that is part of what we can consider the true facts of what actually happened, then that can be... But don't we have to consider that the facts are true as drafted in the complaint? I beg your pardon? For purposes of the complaint, you have to consider that they are true. You do. And if those allegations appear in the underlying complaint, then they would invoke the exception. And that is something that can be expected to be found in the underlying complaint. Why would a valid cross-complaint be considered differently than the original complaint? I beg your pardon? Well, for a couple of reasons, Your Honor. One is that the cross-complaint is not what's covered. It's not what makes the claim that the insurer is called upon to defend. And so it's not a reliable descriptor of what the underlying plaintiff is seeking. And what the underlying plaintiff is describing is what provides the basis for coverage, not what the person who is the named insured, not the manner in which that party describes the claim. That invokes the second reason that it's improper to consider a cross-claim or a counter-claim, as in this case, and that is that it has an entirely different purpose. It's raised by the named or by the insured in this case. It is intended to state a claim back against the original claimant. The purpose of the underlying complaint, the sole source of coverage allegations, as Zurich held, is the descriptor of the claim itself. The other pleadings in that case, particularly in this case, for example, the counter-claim that's at issue here, has an entirely different purpose of stating a claim and, therefore, does something different. It's intended to, in some cases, such a pleading would be intended to diminish the plaintiff's claim or to refute it or to transfer the liability. In this case, it's an independent action. It happens to have been filed within the same action that was already brought. That's what makes it a counter-claim. But it's an independent assault allegation and assault action leveled by the insured against the original underlying plaintiff. Mr. Howey, isn't there an inherent conflict, though, in the defense of the insured in the underlying lawsuit? And how should that conflict be resolved? For instance, if the insured is not guilty because he acted in self-defense, then you don't have to pay. Pekin doesn't have to pay. And if the insured acted intentionally but not in self-defense, the policy excludes coverage. So in both situations, there's a conflict, isn't there?  No, Your Honor. If I understand Your Honor's question, and please bear with me, but if I understand the question, that isn't a concern here because there is no allegation of self-defense in the underlying complaint. The duty to defend is not invoked. First of all, we begin with the fact that this is an excluded claim because of the intentional act exclusion. And that's no longer in dispute, apart from the question of the self-defense exception, which is before this Court. But the preliminary question of whether it's excluded by the intentional acts exclusion has already been decided in Pekin's favor by both the Circuit Court and the Fifth District. That's no longer at issue. It's not before this Court. So beginning with the fact that it is, in fact, excluded, there is no allegation in the underlying complaint to give rise to the invocation, if you will, of the self-defense exception. But that precludes any exception even being considered then. I think what Your Honor is referring to would and might apply to the duty to indemnify, which is also something. No, it's the self-defense exclusion. I mean, the self-defense exclusion would never come in if you don't even have the facts in a counterclaim or cross-complaint to allege that. Well, the duty to indemnify would be based more on what is proved at trial and what's established. We're concerned with the duty to defend only with what's alleged. And what's alleged, just in the context of the underlying complaint, doesn't invoke self-defense. It is solely an assault case. It is solely intentional acts, even despite the underlying plaintiff's attempt to characterize those acts as negligence. Counsel, is there any way that in this case the issue of self-defense could have been put into play? It could have been put into play by the underlying plaintiff. And the underlying plaintiff would be the person against whom the self-defense would be alleged, right? That's correct. So the only way that we could consider self-defense at this juncture, according to your argument,  is to have the plaintiff come in and allege facts that were against this very position. I dispute that those would be the defendant's facts, Your Honor. It wouldn't be necessary for the plaintiff to have alleged the facts that, in this case, the defendant has alleged in his own separate cause of action. How could we ever expect the litigant to come in and allege facts that were against this very position? If those are part of the facts, Your Honor, I don't think we can expect the plaintiff to do anything different. Certainly not in a legal regime that's a fact-pleading jurisdiction, as Illinois is. Which members of the Court have come back to again and again, is that would preclude considering the issue of self-defense at all, in any case such as the one that you bring before us. It would prevent the Court from considering self-defense if it's not raised by the plaintiff. And the plaintiff may very well make an allegation, perhaps even in the alternative, that the so-called negligence of the defendant, the insured, was part of an action of self-defense. There is no systemic reason to expect that that wouldn't happen. Now, it is certainly conceivable that many plaintiffs might be very reluctant to make those allegations. I will concede that. Why would any plaintiff allege there was self-defense which might defeat his cause of action? If it's true. This is a fact-pleading jurisdiction. It may not be an affirmative defense that a defendant would raise, and still it comes into the trial, but it's not raised by the plaintiff. I still have difficulty in seeing how any plaintiff would ever allege anything that may defeat his cause of action. The facts are going to be whatever they are. If the notion of self-defense is part of what actually happened, then I think it is unreasonable to expect the plaintiff not to raise that. It may be understandable that he won't want to. It may make the case difficult to win. It may make the case so difficult to win, in fact, that the plaintiff doesn't bring it. But if that is part of the factual context in which the alleged assault occurred, then it is entirely reasonable for that to be raised by the plaintiff. Not necessarily as the only basis on which he or she seeks to recover. Certainly it could be alleged in the alternative. Illinois has a long history of allowing pleadings to be made in the alternative. And that may be something that the plaintiff would be so reluctant to raise that it would dissuade him or her from making the assault claim. But if it is part of the factual background, and if it is a true fact, if you will, then not only is it not unreasonable to expect him to make it, but it's unreasonable to expect him not to. This may be a rarely applied exception. It may be a portion of the policy that is only very rarely invoked and only in very unusual and peculiar circumstances. But that doesn't make it invalid. And it certainly is not a basis for contradicting a rule that this Court promulgated nearly a quarter century ago. One that serves such important systemic concerns of allowing the insurance company to determine what its duties are based upon the claim. I think we're getting caught up on the word self-defense. You're not asserting that the complaint has to have the word self-defense in it. As these questions are being asked, if the complaint said that the plaintiff started to walk towards the defendant and the defendant picked up a pipe and hit the plaintiff, right? I mean, it may give rise, facts may give rise to a potential self-defense defense. It doesn't necessarily mean, I don't think you're saying that, that it doesn't necessarily mean that that self-defense is going to prevail. But to provide coverage, there has to be some allegations that would support self-defense, right? That's correct, Your Honor. And Your Honor's point is well taken. The underlying complaint need not say in so many words that the defendant in an act of self-defense injured the plaintiff. It doesn't need to be quite that explicit. But there does need to be some basis for finding the potential for self-defense. And that's the nature of the case law involving the duty to defend. The duty to defend is interpreted broadly. And if the allegations of the complaint possibly give rise to that allegation or to that theory. But didn't this complaint do that? It said that the plaintiff was in the office of the respondent and the respondent hit him. So are we supposed to read behind the facts of what is actually alleged to determine if there's a self-defense, you know, would he can actually spend the time and energy to look beyond that to see, well, maybe there's a potential self-defense to be raised in the complaint. I mean, is that what Pekin's job is to do? Not at all, Your Honor. Pekin's job is to look at the complaint itself, the underlying complaint. So even if facts that could possibly be self-defense is in the complaint, you need the word self-defense. You don't need the word self-defense, Your Honor. Well, then did I just ask you whether or not you were going to spend the time and energy to read into whether or not the man came in aggressively and there was a possible self-defense? If that's in the underlying complaint, that's Pekin's job is to look to the underlying complaint and to see if, given what's there, what's on paper in that document, if it allows for the possibility that the insured might be found liable but acting in self-defense or for an injury cause in self-defense. As Justice Carmire said, though, what plaintiff would do that? It would defeat his own complaint. Well, first, it doesn't have to state self-defense. It doesn't have to be explicit in that regard. And Justice Carmire's concern, I think, is well taken, but it doesn't take into account the fact that a complaint can allow for the possibility of self-defense without specifically alleging it in those words. This is a complaint. The complaint we have at issue here has already been interpreted not just by Pekin but by the circuit court and the appellate court, which have both found that it alleges only intentional acts. It doesn't – it alleges only an intentional assault. It doesn't contain anything that gives rise to the possibility of self-defense. It is conceivable that another complaint, one not before this court in this case, might allow for that possibility depending on what it contains. I'm not in the practice of drafting plaintiff's complaints, but it's not hard to imagine that a complaint alleging assault might contain facts that would enable a reasonable fact finder and by extension the court in a coverage case to conclude that it allows for the possibility of self-defense. If it explicitly alleges self-defense, which I acknowledge is unlikely but still possible, then that clearly invokes the exception. If it allows for the possibility of an allegation of self-defense, even if it doesn't state it in those terms, that would also give rise to a duty to defend. But the complaint we have in this case does not do that. How broad is that? How deep can you go to take your inferences? As deep as the surface of the paper, Your Honor. It's the words that are on paper that allow for that. In any assault, there's a possibility of self-defense. Not under the facts of this case. And certainly there are many cases in which the underlying complaint doesn't give rise to that inference or that possibility. It would depend upon the facts of the case. We have this case before us which alleges solely an assault. He came to the place of business. He brandished a steel pipe. He injured the plaintiff. Those are not allegations that allow for the possibility of self-defense. A different set of allegations might. A different set of allegations might, in fact, be candid enough to suggest that the defendant actually did act in self-defense. And again, I submit that that might be done as an alternative theory of recovery. And while that is an unusual and peculiar circumstance, it is a possibility. Insurance policies are consumed with the notion of possibilities, some of them very unusual or very rare. There's an exception in most or there's an endorsement in most policies for nuclear war, which thankfully is very rare. But yet it is, in fact, a valid endorsement. And the exception here may also be rarely invoked, rarely used, and only in unusual circumstances. But that doesn't make it any less valid for the purposes for which it's intended. It is not intended for the purposes that it was used in this case. By looking to the insured's own counterclaim, the appellate court went beyond what this court allowed in Zurich, and therefore that decision was incorrect. We respectfully request this court reverse it and reinstate the judgment for Pekin. Thank you, Counsel. Good morning, Justices. My name is Jim Hansen. I'm from Mount Vernon, Illinois. My first time here. It's a great honor to be before you. I'm not doing up here before you. I haven't appeared before you before, so I'm nervous. If you'll bear with me just for a second. As Counsel was standing up here and your questions were being asked, it caused me to remind myself of some of the questions I asked after the ruling was had in the appellate court and how you would raise the issue of self-defense in this case. Jack Wilson bought a policy. Quite frankly, Your Honors, he's not sophisticated in it. Quite frankly, as a lawyer who's practiced law years, reading the fine print of these policies is difficult. But there was a product offered. It was a self-defense exception to an intentional acts exclusion. Hard to get out, but it's what we're here about today. I'm thinking the plaintiff says, Mr. Wilson, I was attacking Mr. Wilson. I was the aggressor. And Mr. Wilson then used too much force or used force that wasn't appropriate. Now, if you think about the policy itself, the indemnity and the duty to defend, whether or not that amount of force was used was too much would keep any damages being paid by the insurance company. And if it was all right, then the plaintiff wouldn't recover. So just in the indemnity part, I know this isn't really an indemnity case, but it goes to your questions, I think, about why do we have a provision in this policy that provides this, not defense, but a self-defense exception if it has no way of being ever used that would help the insured. There seems to be an argument also that there's a great. I'm sorry, Mr. Hanson. Are you saying that the allegations in the complaint itself, the inferences from the allegation would support self-defense? No. I'm going to concede to you. When I read their complaint, it doesn't use the word self-defense. And other than the fact that it says Mr. Wilson picked up a pipe, and this is before, the inference that could be drawn from that that Mr. Bilson picked up a pipe to go forward toward them, I guess an inference that could be drawn that he picked up a pipe to defend himself. But without further facts, we wouldn't know. But the pleading, certainly the plaintiff isn't saying Mr. Wilson picked up the pipe with a reason to defend himself. Well, indeed, the appellate court even threw out the negligence allegations of the complaint, saying that those could be concocted just to try to have liability coverage. And I agree. And if you read those negligences, I'm not going to say they're sad, but they don't even make sense. He picked up tools to use tools negligently. That's not anything that I thought was appropriate. I don't know why plaintiff's counsel added that. I assume maybe he was trying to get coverage to come into play, because by that, I think by that time, there had been a denial of coverage. You heard all the questions, didn't you, Mr. Hanson, regarding how would the self-defense exception ever be invoked unless we could pretty much infer it from the complaint, even if there weren't allegations supporting self-defense? You heard all those questions, right? When would it be invoked? I don't know of a set of circumstances where a plaintiff's attorney would ever file such a suit. My question is a little bit different, though. I mean, it is the law of this state that insurance companies have an absolute right not to defend and not to pay when an intentional tort is committed. I agree with that. I agree. So if every time that there is an intentional tort, an automatic self-defense exclusion is going to be assessed to it, when would they ever have the right to exclude for self-defense? It's the counter of the question that was asked. Well, you know, I take self-defense as being an intentional act. You know, that's why it's an exception. In other words, when you pick up that pipe, you're intending to pick up that pipe, but are you going to be excused from the conduct associated with picking up that pipe in some way? In this case, they drafted the policy 20-plus pages long. The argument is that there is some virus within the system that would allow insurers to go out and manufacture some facts so that they would be defended. I don't know if such exists, but in this case, we filed our counterclaim, and some of your questions were cross-claim, affirmative defense, and what have you. I'm the lawyer that did it. I mean, I was filing a counterclaim because the facts, as my client represented to me, weren't what they said. Now, I, quite frankly, at the time I drafted it, it's not germane to this issue, was drafting that as a counterclaim because my guy got hurt. But the problem I have, and what I try to raise in my argument, is they, the insurance company, are sophisticated in insurance policies. They certainly could limit their exception to the exclusion by a triggering event. I mean, we're sitting here talking about a variety of cases that this court has ruled on over the years to establish what we look at. But in this case, we have another issue. We have this other, I keep confusing them, exception to exclusion, that I think very easily in this case, if they wanted to limit to that, they could have put that in there. If you don't have something in there that limits it, then it would be reasonable to assume that an insured must have some way of getting the benefit of his bargain, or if he can't, then it's, use the term of the appellate court, illusory. It's something there that you can never get. And I think it's important that counsel, all of us are struggling to find out when it would ever be. So why do we put a provision in? I accept your point, Justice, that there may be one. I don't know what it is. But you read the policy as a whole, and all of these provisions that the court has set down as to how we interpret. In this case, Jack Wilson says, I was defending myself, and he can't get defended. And if this court finds that the underlying plaintiff has to allege it, I think excuses the beacon from having to put something in there that would let customers and citizens know that even though this is the exception to the exclusion, it can only be triggered by them. It's somewhat of a policy issue in a way. Let me tell you this, Mr. Hanson. The appellate court found, as I asserted earlier, that in the complaint, that the negligence allegations in the complaint were only put in to try to invoke, to get peaking into the case, right? And you said, I mean, you just told us here, that the counterclaim was filed because the facts, as you knew them, were different than were portrayed in the initial complaint that was filed, right? You told us. Yes. I didn't know anything about the exception. I mean, this is not in the record, but I knew nothing about the exception to the exclusions to whatever. I was filing a counterclaim. I think if you look at the time, I don't have a total recall. I think I had filed my counterclaim prior to a plaintiff revising to add their account for negligence. And I don't dispute that, but for just a pure across-the-board public policy argument, isn't there some merit to saying that the insurance company has to look at the allegations of the complaint itself because a counterclaim could be filed? I'm not saying that's what you did in this case, but a counterclaim could be filed for the very same reason that the appellate court found that in the initial complaint negligence allegations were put in. Yes, yes. Wilson tries to tenor the defense to peak, and they said, oh, no, they're claiming an intentional act here. We don't have any liability. The only exception is self-defense. And then a counterclaim is filed that, lo and behold, all of a sudden it becomes a self-defense situation. I agree, Judge. I believe that a person motivated by alleging false facts could do that. They would also have to be able to prove those facts. But in the meantime, they get a defense. What I'm suggesting to you is the standard you set down by your prior rulings applying to all kinds of cases, and the major cases that were involved when I was reading them, there were summary judgment cases. They weren't judgment on the pleadings cases. But they didn't involve this particular additional, I'm not going to say remedy, this additional coverage that was provided that had no triggering language in it. And you could very narrowly, if you chose, say that if you're going to offer this exception, then you want to restrict it, you need to trigger it by some language in your own document. Because I think otherwise it's selling a product, perhaps, that you can't use. I'll grant you, Your Honor. I don't believe Mr. Wilson read his contract very closely, but the insurance company read it closely, and they presented that product to someone like him, and he bought it. I don't know that there's a great problem with that being posed out there. Perhaps it is. But in this case, I think the court could fashion an error ruling for the facts that we have. It wouldn't have to be global, that in all cases that we are limited to the pleadings. And this court has reviewed some cases in the past where in certain circumstances the courts have looked beyond, using true but well-pleaded facts. The phrase seems to morph a little bit depending on the type of case involved. But in this case, Pekin investigated, knew from Mr. Wilson before they ever denied that he was saying it wasn't that way, but we don't want to consider that because we've got to look at the complaint. I don't see why they didn't restrict the way it could be triggered if that was what they intended. Mr. Howey didn't bring this up, but I think that probably because it's not his primary argument, but with respect to the counterclaim itself, there's a dispute whether even the counterclaim asserts self-defense, isn't there? There is a dispute because it doesn't say self-defense. But I, looking back, I thought it said what it was, which I'm happy to say that it has a fairly detailed of what he told me he did. Well, the counterclaim says he picked up the pipe, right? Yes. So I think they're, I don't want to put words in their mouth, but I think their position is, you know, where is the causal link between picking up the pipe and the injury? My guy's 5'2", his 6'2", he weighs 100 pounds more than my guy. But those are not facts we'd ever get to. Those are not facts we'd ever get to if we don't go beyond the complaint. But also I think Mr. Howey did concede the fact that it doesn't have to have the word self-defense in the complaint, and they would look into whether or not there were any facts that could be reasonably construed as to possibility. And that is true, Your Honor. And Mr. Howey also said that that was limited to the underlying complaint. So if there were words that were used that might lead to other words or other interpretations or inference to be drawn. In this case, it was somewhat of a concern procedurally in the underlying case when the trial judge basically dismissed, basically dismissed and ruled for the plaintiff on the pleadings, not dismissed, ruled for the plaintiff on the pleadings. And after he had done that, I'm looking at the counterclaim. We came back, argued again, dismissed the counterclaim and sent it on up. I thought to myself, what if I proceed on through this case and there's pleadings that are amended at a later point in time? Of course, the argument would be, well, you can re-tender or something like that perhaps. But the way the ruling came down as a matter of judgment on the pleadings, if those pleadings proceeded on, I was thinking at the time that perhaps the court ought to at worst ought to reserve, defend and reserve the issue of indemnity until the case has been decided. But that's an aside, Your Honor. I'm sorry I went that way. It wasn't really relevant to your question. What case can you cite to us that most clearly supports your position? There are no cases that have my set of facts. The language used, I'm sorry to say that, but what I'm saying, I would love to have a case that has an exception, exclusion and those types of things because most of the cases that I read involve, do involve that general policy and order this court set down that we look to the pleadings. Because that deals with the bodily injury and the liability. This is almost like I'm offering you an additional or some variance of what that original insurance offer was. I can't cite you a specific case that addresses that. I do believe those cases in the first district that spoke about looking at things beyond the complaint, the words are relevant, but they really don't deal with my facts. They were looking at issues beyond the complaint for other reasons other than what I'm suggesting to you. In this case, a product was offered. How do you ever get it? They could have limited it. Mr. Hanson? Yes, Your Honor. Would we have, you say there's no other case. I'm sorry, I don't know of a case, Your Honor. Would you have to, would we have to overrule Zurich to rule in your favor or is it distinguishable? I believe it is. I'll just tell you what I think about it because I'm just taking a position from my client. This is more a contract case than it is a policy, a Zurich case. I think in this case, the four corners of this contract provide coverage that is not capable of being triggered unless we look beyond, look beyond. And I don't think this court has to fashion a broad look beyond. There can be some parameters, but to exclude it totally, I believe, is wrong. But I don't know if this court can craft that. But I think it's, we're reading the contract, and I think I made that argument that they were in a position to provide a provision that triggered or limited, and they didn't. And therefore, the only way that a customer could reasonably expect to trigger a self-defense exception would be by allowing him to raise it either in some way. You mentioned, just mentioned indemnity a minute ago. And following up on what Justice Burke asked Mr. Hawley, in this case, since negligence is not an issue, there is no way that the insurance company is ever going to be liable to indemnify your client. Yes. That's my take, Judge. We're talking only about the defense at this point. Yes. I believe, based on my earlier scenario, any plaintiff is going to have to ever get self-defense involved at all if they're going to be alleging it. They're going to have to allege that they were the aggressor, or at least self-defense was promulgated in the interaction. And I think in that case, once it's beyond reasonable force, there's no coverage anyhow. So, I mean, it's the defense. On a very basic level, when my client says, I didn't do it, that didn't happen that way, defend me. We can't, and we're into the very complex technicalities of the policy and the law. Are we limited looking, I guess in this case we're limited looking at the pleadings as to whether there's an issue of self-defense. Is there another mechanism by which this could come up? Should there be a factual hearing and a declaratory judgment action as to whether there is truly an issue of self-defense or whether it's a manufactured allegation? My feeling about it is it would be that insurance companies would either fix it by a provision in their policies that trigger what they're insuring so they can actuarially calculate their risk. But assuming they didn't and left the language the same going forward in the future, they could either start as a reservation of rights, take discovery, and then at some point in time move to be excused from defense. But under the facts we have, it's a little bit different. I would not anticipate if this court would see fit to find that Mr. Wilson is entitled to a defense at this time based on the allegations that are raised that they wouldn't craft appropriate language to solve that problem. So it's your position since we're dealing with a duty to defend rather than a duty to pay, which is broader. I mean, I think counsel would acknowledge that. Yes, Judge. But since we're dealing with that, when we look, because that was my question, when we look at the facts of the counterclaim, you have your client picking up the pipe, right? Not doing anything with the pipe. No. Right? Picking up the pipe. Yes. So it's hard to see where, you know, on the one hand, if there's an intentional act that your client just beat the heck out of somebody with a pipe, they don't have a duty to defend or pay. It's just an intentional act. If there is the situation that we talk about, rare as it might be, where there's allegations that somebody came towards your client and he picked up the pipe and hit somebody a few times, you know, maybe we have a situation there where there could be liability at least if there is a finding that the self-defense wasn't warranted, although it's pled. In your counterclaim, it's just he picked up the pipe. So what you're telling us is there might not be any liability at the end of the day for my client, even if they believe the allegations of the complaint, but there's still a duty to defend regardless of whether there's a duty to pay at the end of the day? On Mr. Johnson's complaint, yes. I don't see how you could ever allege anything that would result in payment, because if you read the policy, it says we will ensure the reasonable use of force in self-defense, not the unreasonable use of force. And in this case, it would be the petitioner, the plaintiff, saying that in some way he was entitled to defend. I was doing something or there was some circumstance that entitled Mr. Wilson to defend himself, and that he used too much. If he used too much, no coverage, no indemnity. If he used a reasonable amount of force, arguably there could be coverage. But I just don't know those facts. And in this case, we wouldn't even get to those questions of self-defense unless we go beyond the four corners of the underlying complaint. To be honest, thank you very much. Thank you, Counsel. May I please the Court? Before you get into it, let me just ask you a hypothetical question. Suppose the duty to defend is decided against the plaintiff in this case. The trial goes on, there's no defense provided by a deacon, and there's a tremendous judgment on the counterclaim. What would then be your position? The position would be the same, Your Honor. You would have to pay? Pardon? You would have to pay?  If the counterclaim should prevail. If the counterclaim should prevail. The judgment is entered. Would deacon then pay? No, Your Honor. That's because there would be no judgment to pay because the judgment would not be a judgment against the insured. That's what the policy promises to pay in circumstances where it applies. A judgment in favor of the insured in his own separate counterclaim whereby he recovers from the original plaintiff, that's not what liability insurance is. Liability insurance would indemnify an insured against a judgment against him. It would not pay a judgment in his favor that he recovers against someone else. And I think that question lays bare the problem of considering a counterclaim, as in this case, which has an entirely different function from that which liability insurance contemplates. Liability insurance is meant to provide coverage against claims that are alleged and eventually, if they are proven, against the insured. That's not what we would have here. Certainly not if the counterclaim were successful. But even just by the allegation of the complaint, just by the bringing of the counterclaim, that does not invoke the purposes of liability coverage. Mr. Howe, Mr. Hansen said something interesting when he said, you know, the set of facts that his client, Wilson, has in his mind's eye is completely different once plugged in the complaint. What if the answer included an affirmative defense of self-defense? That would still be a different person's interpretation of what the claim is. And because liability insurance is meant to cover claims, the defendant's interpretation, the insured's interpretation of what that claim is, is not germane to the interpretation of the claim itself. Liability insurance covers claims, not actual events like property or casualty coverage. And the claim is still one for intentional acts and does not raise the possibility of self-defense. If at the end of the day, at the end of the trial, there was a finding by the jury that Wilson was not liable by reason of self-defense, would you then have an obligation to reimburse for counsel fees or present a defense? Or not presenting a defense? That would be a different set of circumstances. But it would not, it still would not involve an underlying complaint making an allegation that is susceptible to the interpretation of self-defense. That is the clear, bright line that this Court drew in Zurich. It's a valuable line to have. And it represents the systemic concern of making that judgment at the appropriate time when a defense is to be provided. Mr. Howey, then it's still, my question before was, then why have an exception if it never comes into play? Because you can't think of an idea or a time when a plaintiff would actually put something in a complaint that would be against his best interest, like self-defense. So what is the insured getting for his bargain on the insurance policy? The expectation is, of course, that he's going to, if there's going to be a self-defense response on an intentional conduct, he never is going to be able to recover, never. Because you can't look at anything else other than the complaint, which is not going to be one that's favorable to him in any way. Respectfully, Your Honor, I take exception to the premise of your question that it will never come into play. Well, when would it? Give me an example. It certainly would come into play if the underlying plaintiff were to allege explicitly that this occurred in self-defense. But in real life, I don't think that would ever happen. I acknowledge that that would be extremely rare. But the policy contains a number of things that pertain to circumstances that are extraordinarily rare. Not just that, but my example was nuclear war before, and there are others as well. So first, it is something that could be alleged that explicitly. It's unlikely, but it's conceivable. Even though, even apart from that, there are also circumstances where if it's not alleged that explicitly, the pleadings might, the underlying complaint might still give rise to that interpretation. And under other circumstances, circumstances where we don't have solely intentional acts, allegedly committed maliciously for the purpose of injuring the plaintiff, even if we had circumstances that were more susceptible to the interpretation of being self-defense, then those circumstances would invoke the exception. What if Mr. I know we're hitting you with a lot of hypotheticals here, but what if the complaints filed alleges an intentional act, discovery proceeds, the depositions taken of the plaintiff, and it's clear on the face of the deposition that there is a self-defense claim that can be made. And Mr. Wilson or whomever takes the copy of the dep, and he sends it to Peek, and what do they say then? Well, then you would have something more akin to the true but unpleaded facts, which is a subject I frankly expected we would spend a lot more time discussing this morning. But that would be more along the lines of decisions that have interpreted evidence outside the underlying complaint and have concluded that if there are circumstances where the insurer knows conclusively of things or events or circumstances that would give rise to coverage, then it can't ignore those. It can't, as one court memorably put it, it can't construct a formal fortress of the pleadings. But in the counterclaim that was filed and alleged those facts, even the insurer has to take it as true. But the pleadings are different than evidence. And Justice Thomas's suggestion, as I interpreted it, was if there's discovery taken. But your position still is that you only can look to the complaint. That's correct. And to the extent that you could look to anything else, it would have to be within the context of the true but unpleaded facts doctrine. That is an acknowledged exception to the Zurich rule. And there are circumstances where so-called true but unpleaded facts do give rise to coverage, even though they're outside the underlying complaint. But true but unpleaded facts are something entirely different from what we have at issue here. Most specifically, they don't involve pleadings. And that's a clear limitation on the true but unpleaded facts doctrine. Pleadings are mere allegations. They're not facts. They're certainly not known to the insurer to be true facts. And so they're not the sort of thing that can, if you will, get in under the wall of the Zurich rule. The cases that interpret true but unpleaded facts make clear that they concern ancillary matters, formalistic concerns, things that go to the ancillary question of whether a putative insured really is an insured, whether he or she paid the premiums, that sort of thing. But it doesn't go to the question of allegations. Allegations in an underlying, pardon me, in a pleading, particularly one that is filed and prepared by the person who is seeking coverage, who is seeking to be named an insured in some cases. It's not the question here, and I know you don't want to go too far afield, but if indeed the deposition showed the plaintiff charging Wilson and there was something there that was brought to the attention of Pekin in this case, that insurance would be provided then, or defense would be provided then? That would raise some other concerns, Your Honor, and I agree I don't want to go so far as to say that that's a case where coverage would apply. But it would certainly not be, it would not, that argument couldn't be dismissed for the same reasons. It would arguably be a question of whether those are true but unpleaded facts, and I think there's room for dispute about whether they would satisfy that doctrine. But that would be the appropriate doctrine to apply. And if it's satisfied, then it certainly would give rise to coverage in that case. Consistent with the way this Court has always been sensitive, and other courts have all been sensitive to the possibility of concocting allegations, the notion that allegations and underlying pleading cannot be considered to be true but unpleaded facts, and they can't be considered in this case. For all these reasons, Your Honor, I'd be happy to address any other concerns that the Court might have, but otherwise I would simply ask the Court to reverse the appellate court's decision and reinstate the circuit court's judgment in favor of Pekin. Thank you. Thank you, counsel. Case number 108-799 will be taken under advisement as well.